**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| BRADLEY GOSSEN, individually and on behalf of all others similarly situated, | Case No. 3:19-cv-1013 |
| Plaintiff, | |
| v. | |
| TURF HOLDINGS, INC. D/B/A WEED MAN USA, | |
| Defendant. | |

**CLASS ACTION COMPLAINT**

## I. INTRODUCTION

1. Plaintiff Bradley Gossen (hereinafter "Plaintiff") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

2. Plaintiff alleges that Turf Holdings, Inc. d/b/a Weed Man USA ("Weed Man" or "Defendant") sent automated telemarketing calls to him and other putative class members without their prior express written consent.

3. This Class Action Complaint also relates to Weed Man's conduct of making telemarketing calls in the absence of an adequate "do not call" policy or training as well as making calls to individuals who have taken the affirmative step of registering their number on the National Do Not Call Registry.

4. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Weed Man.

5. A class action is the best means of obtaining redress for the Weed Man's wide-scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## II.   JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction over this putative class action lawsuit pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d)(2) & (6), because the aggregate sum of the claims of the members of each of the putative classes exceeds $5 million, exclusive of interest and costs, because Plaintiff brings this action on behalf of proposed classes that are each comprised of over one hundred members, and because at least one of the members of each of the proposed classes is a citizen of a different state than Defendant.

7. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

8. This Court has personal jurisdiction over Defendant because Defendant conducts business in this District and made the telemarketing calls at issue into this District.

9. Venue is proper in this District because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, as the calls were made to the Plaintiff in this District.

## III.   PARTIES

10. Plaintiff Bradley Gossen is a natural person who resides in this District.

11.     Defendant Turf Holdings, Inc. d/b/a Weed Man USA is a Delaware corporation with a registered agent of Corporate Creations Network Inc., 3411 Silverside Road, Suite 104, Wilmington, DE 19810.

## IV.   TCPA BACKGROUND

12.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

**A.     The TCPA prohibits automated telemarketing calls to cellular telephones**

13.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A).

14.     The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

15.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

16.     The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

17.     In 2012, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

**B.      The TCPA's requirement that entities have sufficient policies in place prior to making telemarketing calls**

18.     The TCPA specifically required the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

19.     The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of . . . company-specific 'do not call systems . . .)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

20.     Pursuant to this statutory mandate, the FCC established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 F.C.C. Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

21.     These regulations are codified at 47 C.F.R. §§ 64.1200(d)(1)-(7).

22.     Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in

4

telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 C.F.R. §§ 64.1200(d)(1, 2, 3, 6).

23. This includes the requirement that "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity can be contacted." 47 C.F.R. § 64.1200(d)(4).

24. These policies and procedures prohibit a company from making telemarketing calls unless they have implemented these policies and procedures. 47 C.F.R. § 64.1200(d).

25. Accordingly, all telemarketing calls violate the TCPA, unless Defendant can demonstrate that it has implemented the required policies and procedures.

**C.    The TCPA Prohibits Calls to the National Do Not Call Registry**

26. The TCPA also prohibits make multiple telemarketing calls to a residential telephone number that has previously been registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5).

**D.    The growing problem of automated telemarketing**

27. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

28. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016),

https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-consumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf.

29. In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-nationaldo-not-call-registry-data-book-dnc.

30. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

31. According to online robocall tracking service "YouMail," 4.8 billion robocalls were placed in August 2019 at a rate of 154.2 million per day. www.robocallindex.com. YouMail estimates that 2019 robocall totals will exceed 60 billion. *See id.*

32. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

**V.     FACTUAL BACKGROUND**

**E.     Calls to Mr. Gossen**

33. Plaintiff Gossen is a "person" as defined by 47 U.S.C. § 153(39).

34. Mr. Gossen's telephone number, (XXX) XXX-0259, is assigned to a cellular telephone service.

35. Mr. Gossen's cellular telephone line is used for residential purposes.

36. Mr. Gossen's cellular telephone line has been on the National Do Not Call Registry since 2007.

37. Mr. Gossen has never utilized Weed Man services.

38. However, Weed Man showed up unannounced at his house claiming that the prior owner had used its service.

39. Mr. Gossen provided his phone number, but at no time did he agree to receive telemarketing calls from Weed Man.

40. Nonetheless, shortly thereafter, Mr. Gossen began receiving calls from Weed Man.

41. Mr. Gossen received multiple calls in or around April 2018.

42. On several occasions, Mr. Gossen asked the callers from Weed Man to stop calling him.

43. In fact, Mr. Gossen even initiated three different calls to Weed Man to attempt to ensure that the calls ceased.

44. However, the calls continued.

45. Weed Man either does not have or does not utilize an Internal Do Not Call list, as Mr. Gossen continued to receive calls from Weed Man after these requests.

46. Weed Man does not have a written policy pertaining to "do not call" requests.

47. Mr. Gossen requested to no longer receive calls from Weed Man, yet he continued to receive calls.

48. As such, to the extent a perfunctory written policy exists, Weed Man has not trained its personnel on the existence or use of any internal "do not call" list.

49. And Weed Man continued to call Mr. Gossen after his requests to cease calling, Weed Man does not record or honor "do not call" requests.

50. By the end of June 2018, Mr. Gossen had received nearly 30 automated telemarketing calls from Weed Man.

**F.** **Weed Man's Centralized Dialing System is an ATDS**

51. Weed Man operates a centralized calling center in Pennsylvania.

52. The Pennsylvania calling center handles all of the telemarketing for the Weed Man locations throughout the county.

53. In fact, in response to a complaint made to the Better Business Bureau when an individual received an automated call after she had cancelled her service, Weed Man explained:

> We did look into the situation and review the call and apologize if there was any confusion or miscommunication. Our representative was calling from our centralized call center which is located here in the Carlisle, PA area and handles calls for each of our franchise units within our organization. It seems there was some confusion or miscommunication that you were speaking to someone from the Weed Man USA headquarters.

*See* https://www.bbb.org/ca/on/oshawa/profile/lawn-maintenance/weed-man-usa-headquarters-0107-1301262/customer-reviews (last visited December 5, 2019).

54. These calls were made with an ATDS, as that term is defined by the TCPA.

55. The calls to Mr. Gossen followed a pattern.

56. Before the call was connected there was a distinctive "click and pause" sound, which is associated with a predictive dialing system.

57. The pause signifies the algorithm of the predictive dialer operating. The predictive dialer dials thousands of numbers at once and only transfers the call to a live agent once a human being is on the line.

58. On information and belief, the dialing system used by Weed Man also has the capacity to store telephone numbers in a database and dial him automatically with no human intervention.

59. Loading a list of telephone numbers into the dialing system and pressing a single command does this.

60. On information and belief, the dialing system can also produce numbers using a sequential number generator and dial him automatically.

61. The dialing system can do this by inputting a straightforward computer command.

62. Following that command, the dialing system will sequentially dial numbers.

63. First, it would dial a number such as (555) 000-0001, then (555) 000-0002, and so on.

64. This would be done without any human intervention or further effort.

65. On information and belief, the dialing system used by used by Weed Man is driven by software that uses an algorithm that determines when Weed Man will make a phone call. The dialer makes this determination automatically and without human intervention. These characteristics, too, are indicative of an ATDS.

66. Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up during the telemarketing calls, and their privacy was improperly invaded. Moreover, these calls injured Plaintiff and the other call recipients because they were frustrating, obnoxious, annoying, a nuisance, and disturbed the solitude of Plaintiff and members of the Classes, defined below.

## VI.   CLASS ALLEGATIONS

67. As authorized by Rule 23(b)(2) or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of Classes of all other persons or entities similarly situated throughout the United States.

68. The Classes of persons Plaintiff proposes to represent are tentatively defined as:

> **Autodialed Class:** All persons in the United States who, from four years prior to the filing of this action: (1) Defendant (or an agent acting on behalf of Defendant) called, (2) using the same or similar dialing equipment used to call Plaintiff, (3) on their cellular telephones, and (4) for whom Defendant claims (a) it obtained prior express written consent in the same manner as Defendant claims it obtained prior express written consent to call Plaintiff, or (b) Defendant does not claim to have obtained prior express written consent, and (5) who were not a current customer of the Defendant at the time of the call.
>
> **National DNC Class:** All persons to whom: (a) Defendant and/or a third party acting on Defendant's behalf, made more than one non-emergency telephone calls; (b) to a residential telephone number; (c) that had been listed on the National Do Not Call Registry for at least 31 days prior to the first call; and (d) at any time in the period that begins four years before the date of filing this Complaint to trial.
>
> **Internal DNC Class**: All persons in the United States who, from four years prior to the filing of this action: (1) Defendant (or an agent acting on behalf of Defendant) called (2) with two or more telemarketing calls in a 12-month period and (3) who were not a current customer of the Defendant at the time of the call.

These three are collectively referred to as the "Classes".

69. Excluded from the Classes are counsel, Defendant, and any entities in which Defendant has a controlling interest, Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

70. The Classes as defined above are identifiable through phone records and phone number databases.

71. The potential members of the Classes number at least in the thousands.

72. Individual joinder of these persons is impracticable.

73. Plaintiff is a member of both Classes.

74. There are questions of law and fact common to Plaintiff and to the proposed Classes, including but not limited to the following:

10

      a.      Whether Defendant used an ATDS to make its calls to the members of the Autodialed Class;

      b.      Whether Defendant made calls to Plaintiff and members of the Classes without first obtaining prior express written consent to make the calls;

      c.      Whether Defendant maintained a written "do not call" policy;

      d.      Whether Defendant trained its employees or agents engaged in telemarketing on the existence and usage of any "do not call" policy;

      e.      Whether Defendant recorded or honored "do not call" requests;

      f.      Whether Defendant's conduct constitutes a violation of the TCPA; and

      g.      Whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

75. Plaintiff's claims are typical of the claims of members of the Classes.

76. Plaintiff is an adequate representative of the Classes because his interests do not conflict with the interests of the Classes, he will fairly and adequately protect the interests of the classes, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

77. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

78. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

79. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## VII. FIRST CLAIM FOR RELIEF
### Telephone Consumer Protection Act
### (Violations of 47 U.S.C. § 227)
### (On Behalf of Plaintiff and the Autodialed Class)

80. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

81. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, with an autodialer to Plaintiff's and Autodialed Class members' cellular telephones.

82. Defendant's violations were negligent, willful, or knowing.

83. As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Autodialed Class presumptively are entitled to an award of between $500 and $1,500 in damages for each and every call made.

84. Plaintiff and members of the Classes are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making autodialed calls, except for emergency purposes, to any cellular telephone number in the future.

## VIII.     SECOND CLAIM FOR RELIEF
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiff and the Internal DNC Class)

85.     Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

86.     Defendant placed numerous calls for telemarketing purposes to Plaintiff's and Internal DNC Class Members' telephone numbers.

87.     Defendant did so despite not having a written policy pertaining to "do not call" requests.

88.     Defendant did so despite not training its personnel on the existence or use of any internal "do not call" list.

89.     Defendant did so despite not recording or honoring "do not call" requests.

90.     Defendant placed two or more telephone calls to Plaintiff and Internal DNC Class Members in a 12-month period.

91.     Plaintiff and Internal DNC Class Members are entitled to an award of $500 in statutory damages per telephone call pursuant to 47 U.S.C. § 227(c)(5).

92.     Plaintiff and Internal DNC Class Members are entitled to an award of treble damages in an amount up to $1,500 per telephone call, pursuant to 47 U.S.C. § 227(c)(5).

## IX.     THIRD CLAIM FOR RELIEF
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiff and the National DNC Class)

93.     Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

13

94. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, by making telemarketing calls to a residential telephone number that has been on the National Do Not Call Registry for more than 31 days prior to the first call.

95. As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA, Plaintiff and members of the National DNC Class are entitled to an award of $500 in damages for each and every call made or up to $1,500 for each telemarketing call made deemed to be a "willful or knowing" violation.

96. Plaintiff and members of the Classes are also entitled to and do seek injunctive relief prohibiting Defendant from making telemarketing calls to numbers on the National Do Not Call Registry, absent an emergency circumstance.

## X. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A. Certification of the proposed Classes;

B. Appointment of Plaintiff as representatives of the Classes;

C. Appointment of the undersigned counsel as counsel for the Classes;

D. A declaration that Defendant and/or its affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

E. An order enjoining Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making autodialed calls, except for emergency purposes, to any cellular telephone number in the future.

F.       An order enjoining Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making telemarketing calls to numbers on the National Do Not Call Registry, absent an emergency circumstance.

G.       An award to Plaintiff and the Classes of damages, as allowed by law; and

H.       Orders granting such other and further relief as the Court deems necessary, just, and proper.

## XI.    JURY TRIAL DEMANDED

Plaintiff, on behalf of himself and all others similarly situated, hereby demands trial by jury on all issues in this Complaint that are triable as a matter of right.

Dated: December 12, 19                      Respectfully submitted,

/s/ Samuel J. Strauss
Samuel J. Strauss, SBN 1113942
TURKE & STRAUSS LLP
613 Williamson Street #201
Madison, WI
Telephone: (608) 237-1775
Fax: (608) 509-4423
sam@turkestrauss.com

Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
508.221.1510
E-mail: anthony@paronichlaw.com

*Counsel for Plaintiff and the Proposed Classes*